22 F.3d 1102
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 NORTH COUNTRY ASSOCIATES, Plaintiff-Appellee,
v.
The UNITED STATES, Defendant-Appellant.
 No. 93-5103.
 United States Court of Appeals, Federal Circuit.
 March 1, 1994.
 
 Before NIES, Chief Judge, MAYER and LOURIE, Circuit Judges.
 NIES, Chief Judge.
 
 
 1
 The United States appeals from the decision of the United States Court of Federal Claims granting summary judgment on a claim of North Country Associates (NCA) for additional payment under a lease. We vacate and remand.
 
 I.
 
 2
 This dispute centers upon the assignment of responsibility between NCA and the United States for payment of water and sewer bills to a local municipality. Pursuant to a government contract, NCA and its predecessor developed a military housing project in LeRay, New York. As no public water and sewer systems served the site, NCA and its predecessor built appropriate facilities and sold them to the town of LeRay. Following construction of the project, NCA and the government entered into a lease, of which Article VI provides in part:
 
 
 3
 The Government shall pay all rates and charges which may become payable for water, gas, electric current, oil or other forms of power, fuel or utility used or utilized by the Government, unit occupants or other persons claiming by through or under the Government. Determination of such charges shall be substantiated by metering or submetering. Subject to the terms of Article IV, Developer [NCA] shall be responsible to pay all taxes, general or special, all public rates, dues and special assessments of every kind which shall become due and payable or which are to be assessed against or levied upon said Premises during the term of this Lease.
 
 
 4
 The town financed its purchase of the water and sewer facilities by incorporating its capital costs into fees charged to system users. The town's billing structure initially included two categories of fees: a metered, "operational and maintenance" component and a "Non-Metered--Capital Portion." The government refused to pay the fees in the latter category, contending that Article VI of the lease assigned such expenses to NCA. Although the town later reformatted the bill to present the entire fee on a metered basis, the government continued to withhold payment of those portions of the bill it characterized as relating to the recovery of capital costs.*
 
 
 5
 As a result of the government's refusal to satisfy the entire amount of the bill, the town levied a tax assessment against NCA, the owner of the leased premises. Under threat of foreclosure on its property, NCA paid the tax. It then filed a claim for reimbursement under the above clause which the contracting officer denied. Suit in the Court of Federal Claims followed. The trial court ultimately granted NCA's cross-motion for summary judgment, reasoning that the lease required the government to pay the utility charges, and that even if the government's contrary reading of the lease was reasonable, the doctrine of contra proferentum allocated any risk of ambiguity to the government. This appeal followed.
 
 II.
 
 6
 A motion for summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). To create a genuine issue of material fact, the nonmovant must do more than present evidence raising some doubt regarding an assertedly disputed issue: "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, 477 U.S. at 249-50 (citations omitted). The evidence must, however, be viewed in a light most favorable to the nonmovant, with all reasonable inferences drawn in its favor. United States v. Diebold, 369 U.S. 654, 655 (1962). The moving party bears the burden of demonstrating the absence of all genuine issues of material fact. Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1560 (Fed.Cir.1988). See also A.B. Chance Co. v. RTE Corp., 854 F.2d 1307, 1310-11 (Fed.Cir.1988).
 
 
 7
 Our review of the propriety of a grant of summary judgment is de novo. Dehne v. United States, 970 F.2d 890, 892 (Fed.Cir.1992). Thus, "this court must review the record, to the extent presented to us by the parties, and essentially determine for itself whether the evidence is genuinely conflicting on material issues of fact and, if not, whether the movant is entitled to judgment on those facts." Avia Group Int'l, 853 F.2d at 1561.
 
 
 8
 Upon considering the record before us, we conclude that the Court of Federal Claims erred by granting NCA's motion for summary judgment. Viewing the evidence relied on by the United States in a favorable light, the lease on its face is ambiguous. Further, no document of record defines such crucial lease terms as "charges," "public rates," and "special assessments," and each party can point to probative evidence that supports its interpretation of the lease. We further agree with the government that S.S. Silverblatt, Inc. v. United States, 888 F.2d 829 (Fed.Cir.1989), and Alvin, Ltd. v. United States Postal Service, 816 F.2d 1562 (Fed.Cir.1987), are controlling precedent, providing that the intent of the parties, not the characterization of the fees by the town of LeRay, must provide the meaning of a disputed contractual term. This case is not one where "the plain and unambiguous meaning of a written agreement controls." Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed.Cir.1991) (citation omitted). As the nonmovant, the United States should have been afforded the inference that the lease held it responsible only for usage-based fees, while NCA was charged with bearing expenses which benefit the leased property.
 
 
 9
 We also hold that, at this stage of the proceedings, the doctrine of contra proferentum cannot apply. "It is well settled that where a contractor seeks recovery based upon his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid." Lear Siegler Management Servs. Corp. v. United States, 867 F.2d 600, 603 (Fed.Cir.1989) (quoting Edward R. Marden Corp. v. United States, 803 F.2d 701, 705 (Fed.Cir.1986)). NCA does not argue that it or its predecessor relied upon its interpretation of the contract, and at oral argument, admitted that it could point to no document in the record which explained how the amount of the rent was computed. Nor does the opinion of the Court of Federal Claims address the contractor reliance requirement.
 
 
 10
 Viewing the evidence presented in a favorable light to the nonmovant, genuine issues of material fact were established that preclude disposition of the matter by summary judgment. The judgment of the Court of Federal Claims is therefore vacated, and the matter remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The government alludes to collusion between NCA and the town but this point is not developed